FILED
24 APR 03 PM 1: 58
DISTRICT OF UTAH
BY: DEPUTY CLERK

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of COMTROL, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>M.T. ENTERPRISES, INC., and TIG PREMIER INSURANCE COMPANY<br><br>Defendants. | **MEMORANDUM OPINION**<br><br><br>Case No. 2:97-CV-00249 PGC |
| M.T. ENTERPRISES, INC., and TIG PREMIER INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>vs.<br><br>UNITED STATES FIDELITY & GUARANTY COMPANY,<br><br>Third Party Defendant. | |

This case is before the court on various motions. The underlying facts have previously been

set forth carefully by Magistrate Judge Samuel Alba in his report and recommendation on earlier



cross-motions for summary judgment dated August 8, 2001. The court will not repeat all of those factual recitations other than to note that plaintiff Comtrol, Inc. ("Comtrol") has filed a complaint in this action seeking to recover $84,291.40 in cost overruns resulting from alleged failure of defendant M.T. Enterprises, Inc. (hereinafter referred to as "M.T.") to properly complete a building project – specifically renovations on Building #1 at the Veterans Affairs Medical Center. Comtrol also seeks attorney's fees and costs associated with collecting that amount. This case was transferred to the undersigned judge from Judge Stewart on July 9, 2002, as part of the initial assignment of cases to the undersigned judge.

The court held a lengthy hearing on the summary judgment and other motions on February 11, 2003. Comtrol was represented by Cass C. Butler and M.T. was represented by Brain W. Steffensen. During the course of the hearing, the court made various rulings on different issues. This opinion explains the basis for these rulings at greater length and decides the unresolved issues from the hearing. In short, the court grants Comtrol's motion for deposition of Morris Todd and other important personnel at M.T. (#188-2 and #188-3) and, as a sanction for M.T.'s failure to allow those previously-ordered depositions, strikes the verification provided by Morris Todd as part of M.T.'s opposition to Comtrol's motion for summary judgment. The court also strikes that verification for failing to comply with Rule 56(e), as urged by Comtrol in its motion to strike (# 200-1). The court then grants Comtrol's motion for summary judgment on both its claim and on M.T.'s counterclaim (#181-1), and enters judgment in the sum of $123,204.48 in favor of Comtrol. The

court accordingly denies M.T.'s cross-motion for summary judgment (#193-1) and for a protective order (#177-2).

Following the hearing, the court received from M.T. a motion to reconsider its earlier rulings (#220-1). The court denies that motion.

The grounds for all these rulings are explained below. The opinion therefore serves to supplement the explanations given at the February 11, 2003 hearing.

### Discovery Motions

The court has before it various discovery motions. Of most importance, Comtrol has filed motions to produce M.T. personnel for deposition (#188-2), to compel M.T. to produce documents (#188-1) and in particular to make Morris Todd and Joe Pearson available for the taking of deposition (#188-3). M.T. has filed competing motions for a protective order (#177-1) and for attorney's fees (#177-2).

Of particular concern is whether Morris Todd should have been produced for deposition, as Comtrol argues and M.T. contests. This case has a long and convoluted procedural history, but the relevant facts on this issue are easy to identify. On June 10, 2002, Judge Stewart held a hearing on this case. At that time, Judge Stewart reopened the discovery deadlines and set a new, extended deadline for discovery of July 15, 2002. In particular, Judge Stewart specifically extended discovery to permit (among other things) Comtrol to take the deposition of key M.T. personnel. Obviously, Morris Told and Bill Told would be *the* critical persons to depose in this case, as they were the main

players at M.T.  Another key person would be Joe Pearson, who was substantially involved in the project at issue.

It is undisputed that, shortly following the hearing, Comtrol noticed the deposition of Pearson and the Tolds.  However, on June 19, 2002, M.T. filed for a protective order to preclude these depositions (#177-1).  The purported grounds for this protective order were that then-counsel for Comtrol, Mr. Schoenhals "was not completely candid with the Court at the June 10, 2002 hearing." M.T. claimed that Comtrol had, for no good reason, simply let earlier deadlines pass and that Judge Stewart's discovery extension was therefore somehow improper.

The court denies M.T.'s motion for a protective order and, obviously, the related motion for attorney's fees (#177-2).  The court finds that M.T.'s motion was filed without a legitimate basis in an attempt to obstruct reasonable discovery by Comtrol clearly ordered by the court just a few days earlier.  Judge Stewart had before him all the relevant facts at the time that he ruled that discovery deadlines should be extended.  Mr. Schoenhals did not misrepresent the facts regarding why depositions had not been taken.  To the contrary, for numerous legitimate reasons (such as a stay at an earlier point in the proceedings, referring the case to mediation, and so forth), critical depositions had yet to be taken at the time Judge Stewart fully reviewed the matter and made his ruling.  M.T. then simply choose to block the implementation of Judge Stewart's order by filing an unfounded and obstructive motion for a protective order, and then relying on that motion to preclude clearly relevant and important depositions.  Indeed, the court notes that M.T. filed the motion for a protective order

4

within one month of the fact discovery deadline and within two months of the dispositive motions

cutoff. This gives rise to the inference that the motion was deliberately filed to prevent Comtrol

from obtaining useful information for its summary judgment motion. That inference is only

strengthened by looking at Comtrol's attempt to schedule the depositions. Comtrol had been

attempting to take these depositions for some time. Apparently fearing that M.T. would find some

basis for interfering with the taking of the depositions that had just been ordered by Judge Stewart,

Comtrol attempted to schedule the depositions during the conclusion of the hearing. Dates were in

fact scheduled for these depositions (June 20th, 25th, 26th, and 27th) in the hearing before Judge

Stewart. The day before the first of these scheduled depositions was to start, M.T. filed its motion

for a protective order. Finally, M.T.'s motion rests on the assumption that Judge Stewart was not

familiar with the proceedings in this case. All of the alleged instances of "lack of candor" involve

earlier matters reflected in the docket in the case. So far as the transcript of the hearing reflects,

Judge Stewart was fully familiar with the course of proceedings in the matter when he allowed

Comtrol to schedule the depositions. In sum, M.T. lacked any legitimate basis for its motion for a

protective order.

M.T.'s unjustified obstruction of the deposition of its central players in the lawsuit falls on the

heels of numerous other obstructive actions.[1] The only salient question before the court currently,

however, is how to handle M.T.'s failure to comply with this reasonable discovery request from

---

[1] *See* Comtrol's Memo. in Response and/or in Opposition to M.T.'s Motion for
Protective Order at 7-15 (detailing delays).

Comtrol to depose M.T. principals.  One possible solution would be to allow the depositions, followed by resubmittal of new cross-motions for summary judgment, new cross-responses, and cross-replies.  Such an approach, however, would lead to further delay in what has already been a very protracted proceeding – the very goal that may have been intended by M.T. delaying motion in the first place.  Rather than permit such calculated delay, the court will grant Comtrol's motion for further deposition (#188-2 and #188-3) to the extent of concluding that Comtrol was entitled to conduct those depositions and that M.T. blocked the depositions with an obstructive motion.  Rather than scheduling these depositions at this late date, however, the court will instead impose a sanction. As a sanction under Rule 37 of the Federal Rules of Civil Procedure, the court precludes M.T. from using the one-page verification filed by Morris Told on September 6, 2002, in connection with M.T.'s opposition to Comtrol's Motion for Summary Judgment.  Obviously, it would be fundamentally unfair to allow M.T. to rely on representations while it has simultaneously refused, without good reason, to allow those representations to be tested through deposition.

With respect to Comtrol's motion for production of documents (#188-1), the court finds it unnecessary to order production because the case can be resolved without the documents.  The motion is therefore denied as moot in light of the court's other rulings in this opinion. With respect to Comtrol's motion for other sanctions (#189-1), the court denies the motion for the same reason. These denials, however, are not meant to suggest that the motions are without  foundation.  To the contrary, it may well be the case the Comtrol is entitled to additional sanctions on these issues.  The

court, however, simply need not send the time fully resolving these issues for the reasons explained below.

### Comtrol's Motion for Summary Judgment

Comtrol has filed a motion for summary judgment (#181-1). M.T. has filed an opposition to that motion. The factual basis for M.T.'s opposition is a one-page "verification" by Morris Told. For the reasons noted in connection with Comtrol's motion for a deposition of Morris Told, the court has stricken that verification. Accordingly, M.T. cannot rely upon the representations in the verification to attempt to defeat summary judgment. The court concludes, however, that there are two completely independent grounds for striking the verification as well.

### Failure of the Affidavit to Comply with Rule 56(e)

Comtrol has argued in its motion to strike the factual recitation (# 200-1) that the verification fails to comply with Rule 56(e) of the Federal Rules of Civil Procedure. The court fully agrees. Rule 56(e) requires that verifications (or "affidavits" in the language of the rule) (1) be made on the basis of personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify. While one ground would be sufficient to strike, the Morris Told verification/affidavit fails on all three grounds.

It may be useful to briefly note what the Morris Told verification says. It is essentially a one-paragraph statement that all the statements in M.T.'s opposition memorandum to Comtrol's motion for summary judgment are true and correct. The verification reads as follows:

7

I, Morris Told, have personal knowledge of the facts of the underlying dispute herein, and of the depositions and documents which have been taken and/or prepared in connection herewith. I have reviewed the Statement of Disputed/Undisputed Facts in and Exhibits to MT Enterprises, Inc.'s Memorandum in Opposition to Comtrol's Motion for Summary Judgement and in Support of Cross-Motion for Summary Judgement, and hereby state that based upon my personal knowledge, said Facts are true and correct to the best of my knowledge and information, and that the copies of documents in the Exhibits are true and correct copies of the originals thereof, that the excerpts of taped conversations accurately reflect the substance of conversations that I was personally a party to, and that the summaries and charts prepared also accurately reflect the underlying facts. I declare the foregoing to be true to the best of my knowledge, information, and belief, and under the penalty of perjury.[2]

This verification violates Rule 56(e) for three, separate reasons.

First, Told cannot possibly have personal knowledge of all the facts that are in the 29-page opposition memorandum and its more than 50 supporting exhibits. There are numerous examples, but several may usefully serve to illustrate the problem.

- M.T. asserts: "Judge Stewart only 'extended' discovery because he was mislead by Comtrol's counsel as to what happened with respect to the taking of depositions."[3] Told is not competent to explain why Judge Stewart did or did not make certain rulings.

- M.T. asserts: "Comtrol routinely violated the Federal Prompt Payment act by not paying out amounts which it had drawn from the VA for its subcontractors – such as MT – within the time period required by law."[4] Unless Told was somehow inside the offices of Comtrol, he could not have personal knowledge of how and when Comtrol had drawn money from the VA.

---

[2] Verification of Factual Statements in MT Enterprises, Inc.'s Opposition to Comtrol's Motion for Summary Judgment at 1.

[3] MT Enterprises, Inc.'s Opposition to Comtrol's Motion for Summary Judgment at 19.

[4] *Id.* at 9.

- M.T. asserts: "Comtrol profited by more than $560,000 on the mechanical contract (see compilation of data attached hereto as Exhibit V) . . . ."[5] The financial data in Exhibit V spans roughly 100 pages and comes from a variety of sources – M.T., Comtrol, the U.S. Department of Veterans Affairs – that cannot all be within the personal knowledge of Told.

These are just a handful of examples of a pervasive problem with the affidavit.

Second, the opposition memorandum is filled with items that are not admissible in evidence. A few illustrations will serve to make the point. M.T. asserts: "The truth was that all of these representations were deliberate lies."[6] Obviously, this is an argumentative statement, not admissible evidence. Similarly, M.T. asserts that the surety's payment to Comtrol because of MT's failure to perform "was unjustified and the result of [the surety's] desire to avoid additional costs in this litigation. It is no indication that Comtrol's claims are valid – just that [the surety] got tired and made a business decision to buy peace."[7] Such speculation is plainly not admissible.

Third, the one-paragraph verification fails to show how Morris Told is competent to testify about the various matters in the opposition memorandum. It simply contains a one-sentence assertion to that effect, without setting forth relevant facts. Indeed, the verification, in its concluding

---

[5] *Id.* at 14.

[6] *Id.* at 9.

[7] *Id.* at 14.

9

sentence says that the "foregoing" is true to "the best of my knowledge, information and *belief*."[8] Of course, belief is not appropriate in a Rule 56 affidavit. Earlier, the verification states that certain facts true "to the best of my knowledge and *information*."[9] Of course, one can receive "information" from a variety of second-hand sources that is in no way admissible in evidence.

In addition, the court notes that the opposition memorandum is filled with what can fairly be described as scurrilous material. Thus, in the factual description in the memorandum, the court noticed statements about "deliberate lies," generalized allegations of "bad faith," and counsel's "lack of candor."[10] This is not the stuff of a legitimate statement of facts on a summary judgment motion.

In its motion for reconsideration on this issue, M.T. purports to have collected various decisions allowing use of "verifications."[11] The court has no doubt that in some of these cases a court relied on what was styled as a verification. The question, however, is not one of form but one of substance. In substance, the "verification" provided by Told was defective in significant respects for the reasons explained above.

---

[8]   Verification of Factual Statements in MT Enterprises, Inc.'s Opposition to Comtrol's Motion for Summary Judgment at 1 (emphasis added).

[9]   *Id.* (emphasis added).

[10]   *See, e.g.,* Opp. Memo. at 9, 15, 19.

[11]   M.T.'s Memo. in Support of M.T.'s Motion to Reconsider/Set Aside Orders Re Comtrol's Motion for Summary Judgment, to Compel and/or for Sanctions.

The question then becomes whether the court should attempt to parse through the statement of facts to determine which points might properly be sustained by the Told verification and which points are not. The court declines to do so for the simple reason that it is unable to do so. In this case, the procedure followed by M.T. flagrantly disregards the requirements of Rule 56(e), with the result that the pleading is riddled with inadmissible hearsay, conclusory statements and arguments, and information that is clearly outside the affiant's personal knowledge. Sorting them out is an impossibility. For this reason, the verification/affidavit will be stricken in its entirety.

### Lack of Particularity

In addition to the problem with the affidavit, the court finds that there is yet another fatal defect with M.T.'s opposition to the motion for summary judgment. Under the Local Civil Rules, an opposition memorandum to a motion for summary judgment "must refer with particularity to those portions of the record on which the opposing party relies."[12] In this case, the opposition memorandum fails to do so at numerous points. Instead, it follows the device of simply referring generally to a mass of documents, leaving it up to the court to determine how they might be relevant. Again, while this is a pervasive problem, an example will serve to illustrate the point. MT indicates that "During the course of the project, Comtrol regularly and routinely refused to give MT a complete accounting of charges being made to its contract, telling Morris Told he should use the

---

[12]   DUCiv Rule 56-1(c).

Freedom of Information Act to get the information."[13]  The reference for this is exhibit Q, which is 91 pages of transcribed telephone conversations.   The court preliminarily reviewed these conversations, and was unable to find statements supporting the claims made by M.T.  This type of reliance on a mass of documents recurs throughout the opposition memorandum.

At the hearing on the matter, M.T. argued that at least some of the problems regarding lack of particularity in its memorandum opposing summary judgment could be salvaged by greater specificity found in pleadings filed *later* in connection with various other issues.  It is not clear whether these subsequent documents cure the particularity problem.  But, in any event, this is too late in the day.  The whole point of the particularity requirement is to guarantee a reasonable opportunity for the opposing party (in this case, Comtrol) to respond precisely to the arguments against its summary judgment motion.  That opportunity disappears if there is no response with particularity at the appropriate time.

A related problem in the affidavit and supporting memorandum is the way in which it obfuscates the response to particular points in Comtrol's opening memorandum.  Rather than respond point-by-point to the individually numbered statements of undisputed facts, M.T. has chosen to lump together many of the facts and respond with the general assertion "disputed" and a recitation of its competing claims.   In doing so, however, M.T. avoids (seemingly by design) directly responding to many of the facts asserted by Comtrol.  The conventional way parties respond to

---

[13]  Opp Mem. at 11.

summary judgment memoranda in this court is point-by-point. Again, the court would not insist on

this particular form if the substance of the response were appropriately handled in another way. But

M.T.'s response avoids substantively and particularly responding to Comtrol's allegations on many

critical points. An illustration is provided below in the discussion of whether the attorney's fees

provision in the contract between the parties had been modified.

Accordingly, the court concludes that the opposition memorandum fails to satisfy Local Rule

56-1(c) regarding particularity of response. The court will therefore treat Comtrol's statement of

facts in its motion for summary judgment as admitted, as provided in the local rule.[14]

* * * * *

In sum, for three separate and independent reasons, the court finds Morris Told's verification

cannot be used to oppose Comtrol's motion for summary judgment. First, M.T. obstructed a

deposition of Told and, as an appropriate sanction, M.T. cannot rely on his undeposed statements.

Second, the verification fails to comply with the requirements of Rule 56(e) for proper affidavits.

Third, the verification read in tandem with the accompanying memorandum, fails to state with follow

the local rule requiring particularity in a response to a summary judgment motion.

The court is not unmindful that striking the affidavit has significant consequences in this

case. However, the court has carefully reviewed each of these three grounds, all of which it recited

at the initial hearing on this matters, and M.T.'s subsequent motion for reconsideration of these

---

[14] *See* DUCiv R 56-1-(c).

rulings. On each of these three grounds, M.T. has fallen far short of what would be required to obtain admission of the verification. Indeed, the court concludes that the M.T.'s failures were part of an attempt to obscure its lack of a substantive response to Comtrol's summary judgment motion. Therefore, it is entirely appropriate to conclude that M.T. cannot use the verification.

*Comtrol's Causes of Action*

Comtrol's motion for summary judgment seeks judgment on its first and third causes of action in its complaint. The second cause of action, against TIG Premier Insurance Company (a surety), has previously been settled for $80,000. It is therefore not relevant here, except as it indirectly affects the financial calculations described below.

Turning, then, to the first cause of action, Comtrol seeks $84,291.40, together with interest thereon and costs incurred in collected it, together with reasonable attorneys fees. Comtrol appears to agree that the $80,000 it received from TIG Premier Insurance Company ("TIG") settles part of the $84,291.40 claim. Comtrol, however, seeks a judgment that M.T. breached the contract and is, therefore, responsible under the contract for attorneys fees for collecting this sum.

This issue does not involve construction of the Miller Act, so state law rather than federal law governs the issue. The court concludes that summary judgment is appropriate on Comtrol's first cause of action. Comtrol's memorandum demonstrates, based on undisputed facts, that

(1) there was an agreement – specifically, the subcontract supplemented by change orders;

(2) that there was breach - that MT did not fully perform the contract; and

14

(3) and that there are damages in the amount of $84,291.40.

For the reasons explained previously, none of these facts are disputed because of the deficiencies in M.T.'s response.

The court notes, however, that even if the verification were somehow viewed as appropriate, it would reach the same conclusion. M.T. has made only generalized allegations that there are disputed issues of fact on the breach of contract claim. It is has not carried its burden of showing specific disputed issues of fact. Therefore, the court finds that M.T. breached the contract, and the summary judgment is appropriate for Comtrol on this cause of action.

Comtrol also seeks summary judgment on its third cause of action. This cause of action alleges that Comtrol was entitled to withhold $31,146.95 due to M.T. from another construction project under its right of setoff. In a previous ruling on this matter, Judge Stewart adopted Magistrate Judge Alba's recommendation that a decision on this issue should be deferred until a decision on the first cause of action. In light of the court's decision on the first cause of action, the court now concludes also that Comtrol was entitled to set off the $31,146.95, particularly in light of the possible bankrupt status of M.T. at the time of the setoff.

*Waiver of Comtrol's Claims*

At the February 11, 2003, hearing on this matter, the court announced its tentative rulings in favor of Comtrol on these causes of action in its complaint. This was after the court had spent the better part of two hours hearing arguments on these issues. At this point, counsel for M.T. told the

court that summary judgment for Comtrol was not possible because counsel for Comtrol had

previously dismissed the complaint. The court was, frankly, incredulous at this representation. The

court could not believe that, at the conclusion of a lengthy hearing, it was learning for the first time

that much of the hearing was unnecessary. The court therefore inquired further as to the basis for

these representations. Counsel for M.T. directed the court – once again – to the verification by

Morris Todd of M.T.'s opposition to Comtrol's Motion for Summary Judgment. The opposition,

as verified by Todd, stated:

> But, in court when the issue of Comtrol's failure to produce documents as ordered
> by Judge Alba was being litigated, Comtrol represented that as a result of the
> payment by TIG, Comtrol no longer had any claim against MT and that the only
> remaining claims in this lawsuit were MT's counterclaims.[15]

Curiously, while this representation was made in the statement of facts section of M.T.'s

memorandum in opposition to summary judgment, there was no argument based upon it in the

argument section. In other words, M.T. did not argue in its memorandum that Comtrol's claim had

previously been dismissed.

The court then asked counsel for M.T. how confident he was about the accuracy of the

representation about the dismissal of Comtrol's claim at an earlier hearing. Counsel for M.T.

responded that he was "very sure." Counsel further argued that Morris Todd had personal

knowledge of this fact because he was in Judge Alba's courtroom the day Comtrol made these

representations about dismissal. Comtrol's new counsel doubted the accuracy of the representations,

---

[15] Opp. Memo. at 14-15.

but was not completely certain. (Comtrol's previous counsel, Mr. Schoenhals, has passed away several months earlier.)

The court therefore agreed to take the matter under further advisement to investigate the accuracy of M.T.'s claim. The court has now received briefing on the matter and, having carefully reviewed the briefing, believes even more strongly that its earlier rulings are correct.

Counsel for M.T. is *not* correct that Comtrol had represented that it "no longer had any claim against MT." Here is the relevant portion of the relevant transcript:

> MR. SCHOENHALS: I feel like I need to make the disclosure because I don't want someone to come back later and say I didn't disclose this, what had occurred. Last night at 6:00 we reached a settlement agreement and the bonding agreement to pay 100 percent of our claim, 100 percent of the interest and our attorney fees up through this discovery dispute. We'll reduce that to writing. *When that's reduced to writing and the check is paid,* Your Honor, Comtrol will be filing a dismissal of its complaint against MT because we will have been paid in full.
>
> THE COURT: Mr. Fetzer, is that a correct representation of the agreement – or wait a minute, is someone here from TIG?
>
> MR. SCHOENHALS: No, he isn't, Your Honor. He asked me to suggest to you that he would ask to be excluded because they had resolved it with us and they have no further interest in the case.
>
> THE COURT: Let me ask you this. *If that is the case,* then what would be left of this case?
>
> MR. SCHOENHALS: The only thing that would be left, Your Honor, is the counterclaim of MT.
>
> THE COURT: Okay.

MR. SCHOENHALS: I wanted to make sure I made that disclosure as timely as I could.[16]

As is revealed from transcript, counsel for Comtrol was simply reciting a *provisional* agreement that had been reached and explaining to the court what would happen *if* things unfolded as counsel anticipated. The disclosure was being made "as timely" as possibly – that is, as early as possible – so that everyone was on notice as to how things might unfold.

Documents associated with the settlement strongly suggest that a full settlement of Comtrol's claim was not part of the agreement that was ultimately reached.[17] More important, the settlement agreement was later reduced to writing. The stipulated order of settlement, entered on December 15, 1999, specifically provided: "ORDERED that this action and all claims of [Comtrol] alleged here, are hereby dismissed with prejudice as against defendant TIG Premier Insurance Company *only*."[18] This stipulated dismissal was actually signed by counsel for M.T. Therefore, there could be no confusion about the scope of the dismissal – that is, no confusion that the dismissal ran against TIG Premier Insurance Company only and that Comtrol's claims against M.T. were still alive.

---

[16] Comtrol v. M.T. Enterprises, Inc., No. 2:97-CV-249S, Tr. (Oct. 14, 1999) at 85-86 (emphases added)

[17] *See* Comtrol's Supp. Brief on Issues of Attorney's Fees, Damages and Settlement with TIG Premier Insurance Co., Exhibits A, B & C.

[18] Order of Dismissal with Prejudice (Dec. 15, 1999) (emphasis added).

18

It therefore is apparent that Comtrol had not dismissed its causes of action against M.T. by virtue of some provisional verbal representations to Judge Alba. Moreover, if M.T. felt otherwise, there were more than three years in which it could have raised the issue. Instead, M.T. deliberately waited to press this argument until after the conclusion of a summary judgment hearing at which things had gone badly for its position. That is plainly too late in the day to present such a claim. The court concludes that not only is M.T.'s claim without merit but, in addition, it is estopped from raising this issue by deliberately waiting three years to present it.

The court has set forth the facts regarding this alleged dismissal of Comtrol's claims against M.T. at some length because they reinforce the conclusion about striking Morris Todd's verification. Mr. Todd purported to provide verification, based on personal knowledge, that Comtrol had actually dismissed its claims against M.T. As the facts just recited prove, he does not have personal knowledge of this fact because it did not happen. More generally, the deficiency of the verification on this particular point demonstrates how far M.T. has deviated from the ordinary approach to contesting a summary judgment motion. It is obviously not proper procedure to attempt to prove what had happened at a transcribed court hearing by having someone who was present a court hearing provide a "verification" of what happened based on his recollection. Instead, the appropriate procedure is to examine the transcript. Rather than following normal procedure, M.T. provided a transcript only when the court directed it to do so *after* the summary judgment hearing. This point reinforces the court's conclusion that it is proper to strike the verification.

*Attorney's Fees for Comtrol*

In light of these rulings, judgment for Comtrol on the first and third causes of action is appropriate.  The question next arises as to the appropriate amount of the judgment.  Comtrol seeks only attorneys fees associated with pursuing its claims against M.T. and has provided appropriate affidavits supporting those fees.

The general rule in Utah is that a party may recover attorney's fees only when provided by statute or contract.[19]  The Subcontract Agreement dated June 10, 1994, between Comtrol and M.T. appears to expressly provide for attorney's fees, costs, and other loss "incurred or suffered on account of any breach of the provisions or covenants of this contract."[20]   Under this provision, Comtrol appears to be clearly entitled to reasonable attorney's fees for fees spent attempting to collect damages for M.T.'s breach of contract.

At the conclusion of the February 11, 2003, hearing, the court directed supplemental briefing on whether this provision was enforceable.  On March 3, 2003, Comtrol filed a memorandum with supporting affidavits and exhibits concerning the attorney's fees provision.  Comtrol noted that, while there are some markings on the attorney's fees provision that could arguably be viewed as deleting that provision, none of the markings were ever initialed by the parties.  An affidavit from Sharon Zobell, Secretary of Comtrol, stated that the markings "were not part of the contract, as

---

[19] *See Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982); *Collier v. Heinz*, 827 P.2d 982, 983 (Utah Ct. App. 1992).

[20] Subcontract Agreement (June 10, 1994), at 2.

agreed, between Comtrol and MT."[21] This representation was supported by an October 8, 1999, letter from Comtrol's attorney, Jack Schoenhals, which recites the facts in an identical way. (Mr. Schoenhals has since passed away.)

On March 27, 2003, M.T. responded with a memorandum on the attorney's fees issue. In that memorandum, M.T.'s attorney asserted that the attorney's fees provision had been jointly stricken by the parties. However, no supporting affidavit or other information corroborating that assertion was provided. Accordingly, the court – once again – has no contradictory affidavits or other information from M.T. The court therefore finds that the markings did not constitute a modification of the agreement.

As a further justification for this conclusion, the court notes that Comtrol had asserted as an undisputed fact in its opening memorandum supporting summary judgment that there were no written agreements modifying the subcontract.[22] An affidavit supported this assertion. As noted above, M.T.'s response to this specification fact was lumped together with numerous other facts, obscuring whether M.T. was challenging this particular assertion. The court has been unable to find a particular response from M.T. to the relevant part of this assertion (although M.T. has argued that there were several written "Change Orders" that modified other, unrelated parts of the subcontract). These facts provide further support for the conclusion that the attorney's fees provision is binding.

---

[21]  Affidavit of Sharon Zobell at 2.

[22]  Plaintiff's Memo. in Support of Motion for Summary Judgment at 7.

21

In its March 27, 2003, memorandum on the attorney's fees issues, M.T. also argued that Comtrol's settlement with TIG relieved M.T. of any obligation to pay attorney's fees. As noted above, the settlement with TIG in no way settled Comtrol's claims against M.T. Moreover, TIG paid only $80,000. Comtrol's substantive claim against M.T. for cost overruns was for more than $84,000 and, in addition, for attorney's fees. Therefore, the settlement with TIG could not have extinguished all of Comtrol's claims for attorney's fees against M.T.

### Size of Attorney's Fees Award

The next issue before the court is the size of the attorney's fees award. Ordinarily, the court would hold an evidentiary hearing on a fees award if there were significant factual disputes to be resolved. Here, however, it is clear that an evidentiary hearing would not assist the court in any way because M.T. has not substantially disputed the size of the award.

As noted above, the court directed supplemental briefing on attorney's fees following the February 11, 2003, hearing. This was done to insure that M.T. had full opportunity to contest both the basis for awarding fees and the amount of those fees. On March 3, 2003, Comtrol submitted a memorandum and supporting affidavits. On March 27, 2003, M.T. submitted a responsive memorandum with exhibits attached. M.T.'s responsive memorandum, however, contests only the *legal* basis for awarding fees, rather than the factual support for the fees.

M.T. raises essentially two legal objections to awarding fees. First, M.T. contends that Comtrol's settlement with TIG extinguished Comtrol's claim for fees against M.T. For the reasons

22

explained above, the plain language of the settlement agreement proves this contention is meritless. Second, M.T. contends that Comtrol is entitled to fees only for litigating legal issues on which it prevailed, not for those on which it lost. M.T. appears to misunderstand the basis for a fees award in this particular case. The key issue is what the contract between the parties provides. As the Tenth Circuit recently explained in analogous circumstances (albeit in an unpublished opinion):

> Although the Miller Act itself does not provide for attorney's fees, when they are provided for by contract, the fees are routinely awarded and the contract is enforced according to its terms. We have explained that the award of attorney's fees under federal civil rights or other statutes is fundamentally different from the provision for fees between parties in a commercial agreement. Where a contract, as opposed to a statute, provides for attorney's fees, the district court should not apply close scrutiny of awards, but instead should award fees consistent with their contractual purpose: to give the parties the benefit of [their] bargain.[23]

Here, the contract explicitly provides: "The subcontractor shall indemnify the Contractor and the Owner against, and save them harmless from, any and all, loss damages, expenses, costs, and attorney's fees incurred or suffered *on account of* any breach of the provisions of covenants of this contact."[24] Thus, under the explicit terms of the contract, there is no requirement that Comtrol prevail on a particular issue, only that it incur or suffer fees "on account of" M.T.'s breach. There is no dispute that all of Comtrol's fees in this matter have been suffered on account of M.T.'s breach.

---

[23]  *United States ex rel. Noyes v. Kimberley Const., Inc.*, 43 Fed. Appx. 283, 2002 WL 1722139 (10th Cir. 2002) (unpublished) (internal citations and quotations omitted).

[24]  Subcontract Agreement (June 10, 1994), at 2 (emphasis added).

23

While close scrutiny of fee awards is not required by the contract, out of an abundance of caution, the court has independently reviewed not only the supporting affidavits but court records reflecting the quantity and quality of the services provided.  The court finds that the fees and expenses are reasonable for this particular case.  This case involved a variety of defenses being raised by sub-contractor to payment on a debt owed to a contractor.  Extensive discovery was required, and numerous motions briefed and argued before the court.

Accordingly, the court will enter judgment for Comtrol and against M.T. in the sum of $123,204.48 for the remaining attorneys fees and expenses, in accordance with the contractual right to attorneys fees and expenses set forth in Section 2 of the Subcontract Agreement between the parties dated June 10, 1994.  Based on the uncontested affidavit of Mr. Schoenhals, dated August 9, 2002, the court finds that $89,759.10 is reasonable for Comtrol's attorneys fees in pursuing its claims through August, 2002.  Based on the uncontested affidavit of Sharon Zobell, Comtrol thereafter incurred reasonable fees of $24,154.96 in connection with the summary judgment hearing and related matters.  Based on the same uncontested affidavit, Comtrol has incurred reasonable expenses of $7,485.42.  Based on the uncontested affidavit of Cass Butler, reasonable fees in connection with the oral argument on February 11, 2003 of $1,805.00.  The total judgment for Comtrol is therefore:

| Fees through August 2002 | $89,759.10 |
| Fees after August 2002 | $24,154.96 |
| Expenses | $ 7,485.42 |
| Fees for argument | $ 1,805.00 |

24

-------------
$123,204.48

*Counterclaim*

M.T. has filed a counterclaim against Comtrol.  Comtrol seeks summary judgment on the counterclaim and asks that it be dismissed with prejudice.  The court concludes that summary judgment is appropriate for Comtrol on the counterclaim for the following reasons.

First, while Comtrol has provided detailed allegations proving that the counterclaim is without merit, M.T. has not provided affidavits or other information that would defeat summary judgment.  Here again, the Told verification is not sufficient, nor is the opposition memorandum sufficient, for the reasons explained previously.

Second, even if the court were to look past the deficiencies in the verification and its memorandum, summary judgment for Comtrol would still be appropriate.  M.T.'s opposition memorandum follows the same defective approach in simply referring generally to documents without explaining how they defeat the counterclaim.  For instance, in its statement of undisputed facts #79, Comtrol explains that M.T. "has failed to identify any payment which Comtrol failed to pay to MT in a timely manner."  This statement is supported by an affidavit from Mr. Burk.  In response, M.T. cites to answers to interrogatories – exhibits OO and QQ.  These exhibits contain nothing but a string of numbers, which apparently are a collection of invoices and similar documents in the case. M.T. has never explained, so far as the court can determine, how Comtrol was liable for these amounts. At the very least, there is no particular explanation in the memorandum opposing

25

summary judgment. In the court's view, M.T. has attempted to obscure the fact that there is no genuine basis for its counterclaim (or its defenses to summary judgment) by burying the court with irrelevant documents. A mountain of irrelevant documents does not provide a legitimate basis for a counterclaim.

In addition, defects in the counterclaim provide additional justification for summary judgment for Comtrol. First, the counterclaim is limited to breach of contract claims. The court has reviewed the counterclaim, and finds that it does not plead a claim for damages arising out of unreasonable and unexpected delays in construction caused by Comtrol. Similarly, the counterclaim does not reference the federal statute known as the "Prompt Payment Act," so M.T. has no cause of action on that theory.

Second, the court finds that the undisputed facts demonstrate that on or about July 17, 1995, M.T. seriously breached the subcontract by not paying its employees. At that point, Comtrol instituted a practice of paying M.T.'s employees directly in order to keep them on the Project. M.T. executed change orders through December 27, 1995, reflecting this practice. These change orders reflected accumulated balanced and revised contract total amounts. Therefore, M.T. could not assert any claim for breach of contract for events prior to December 27, 1995. With respect to the events after that, the act of signing the previous change orders established a course of dealing that bound M.T. The counterclaim is fundamentally at odds with the course of dealing through December 27, 1995, and therefore summary judgment is appropriate on this basis as well.

*M.T.'s Cross-Motion for Summary Judgment*

Following Comtrol's motion for summary judgment, M.T. filed a cross-motion for summary judgment (#193-1). In light of the foregoing, it is clear that this motion should be denied.

As independent grounds for denying the motion, the court notes that the deadline for filing dispositive motions was set at August 9, 2002. M.T. did not file its motion in a timely fashion. Instead, it attempted to sneak its motion in after the deadline by including the motion as part of its opposition to Comtrol's motion for summary judgment. This violates the deadline and, more important, creates serious problems for Comtrol and the court in terms of scheduling and sequencing response briefs, reply briefs and the like. Therefore, this motion will be denied as untimely as well.

### Conclusion

For the foregoing reasons, the court grants Comtrol's motion for deposition of Morris Todd and other important personal at M.T. (#188-2 and #188-3) and, as a sanction for M.T.'s failure to allow that deposition, strike the verification provided by Morris Todd as part of M.T. opposition to Comtrol's motion for summary judgment. The court also strikes that affidavit for failing to comply with Rule 56(e), as urged by Comtrol in its motion to strike (# 200-1). The court grants Comtrol's motion for summary judgment on both its claim and on M.T.'s counterclaim (#181-1). The court also enters judgment in the sum of $123,204.48 in favor of Comtrol. The court accordingly denies M.T.'s cross-motion for summary judgment (#193-1) and for a protective order (#177-2). The court

27

also denies M.T. motion to reconsider earlier rulings (#220-1), finding no good cause for reconsideration. The clerk's office is directed to enter judgment accordingly and to close the case.

SO ORDERED.

DATED this 23rd day of April, 2003.

BY THE COURT:

Paul G. Cassell
United States District Judge

tsh

United States District Court
for the
District of Utah
April 25, 2003


* * CERTIFICATE OF SERVICE OF CLERK * *


Re:  2:97-cv-00249


True and correct copies of the attached were either mailed, faxed or e-mailed
by the clerk to the following:


        Jack L. Schoenhals, Esq.
        420 E S TEMPLE STE 355
        SALT LAKE CITY, UT  84111

        Mr. Brian W Steffensen, Esq.
        STEFFENSEN LAW OFFICE
        2159 S 700 E STE 100
        SALT LAKE CITY, UT  84106
        JFAX 9,4857140

        Mr. Cass C. Butler, Esq.
        CALLISTER NEBEKER & MCCULLOUGH
        10 E SOUTH TEMPLE STE 900
        SALT LAKE CITY, UT  84133
        JFAX 9,3649127